KENNETH KEENAN *vs.* SALVATORE COPPA.

DECEMBER 7, 1937.

PRESENT: Flynn, C. J., Moss, Capotosto, Baker and Condon, JJ.

BAKER, J. This is a proceeding in equity in which the complainant seeks to have the court declare void and order cancelled on the records of land evidence, because of alleged

usurious interest, two mortgages, executed by him to the respondent, on real estate in the city of Warwick. The bill also prays for certain injunctive and other relief. The cause was heard by a justice of the superior court on amended bill, answer, replication and proof. At the conclusion of the hearing, the trial justice dismissed the bill, and a decree to that effect was duly entered. The cause is before us on the complainant's appeal from the entry of that decree.

The two mortgages, both covering the same parcel of real estate, were drawn by a reputable attorney and were executed by the parties in his presence. The first mortgage, dated and acknowledged July 18, 1930, is for $600; the second mortgage, which is stated therein to be subject to a previous mortgage of $600, is dated and acknowledged January 15, 1932, and is for $450. In each instance the note secured by the corresponding mortgage is payable in six months. The first mortgage and note carry interest at the rate of six per cent per annum, payable semi-annually in advance. In the second mortgage is a provision that the note secured thereby "is not to bear interest." The note itself, however, contains the statement that: "This note is to bear no interest up to the due date."

On November 2, 1932, the respondent's attorney wrote to the complainant advising him that the attorney had received instructions from his client to foreclose the mortgage, without specifying which one, and asked the complainant to consult with him in reference thereto before a definite date in the near future. It appears in evidence that prior to the sending of this letter, a postdated check for $100 signed by the complainant, payable to the respondent, and bearing date October 15, 1932, had been presented for payment on that date to the bank upon which it was drawn, and had been returned to the respondent with the notation "no account." While the parties differ as to the reason why the check was given by the complainant to the respondent,

they do agree that it is in no way connected with the mortgages which are involved in the present suit.

The evidence further shows that on November 8, 1932, the complainant, with one Leco, went to the respondent's house and asked him for a transfer of the two mortgages to Leco for $600, which request the respondent refused to comply with. Leco testified that he went with the complainant to offer the respondent $600 to settle a mortgage, and that the respondent refused to accept that sum because "it was not enough money." No mention is made by this witness of any conversation at this time concerning interest. In cross-examination, in answer to a question as to whether he had $600 with him on this occasion, Leco replied: "I didn't have the money, but I had my check book." It is clear that this evidence is not sufficient to prove a legal tender to the mortgagee on behalf of the mortgagor, even if we assume that the sum offered was correct. Thereafter the respondent started foreclosure proceedings under the second mortgage, which, it is not disputed, was then due and in default according to its terms, and the real estate in question was advertised to be sold on March 2, 1933. The complainant then brought this bill to avoid both mortgages.

He did not question that he had received consideration for the first note and mortgage, or that they were, according to their express terms, valid, but he did testify to the effect that, notwithstanding the provision for six per cent interest appearing in those instruments, he, in fact, agreed to pay the respondent $30 a month as interest on that mortgage, and actually made eight such payments amounting to $240. The complainant, however, failed to produce, by way of corroboration, any receipts from the respondent for such payments, or to satisfactorily account for the absence of such receipts. He further gave evidence that the second mortgage represented ten months of such interest in arrears on the first mortgage, together with the sum of $150

as interest in advance for six months at the rate of $25 a month on the second mortgage, which two sums made up the total of $450.

The respondent, who had difficulty in expressing himself clearly in English, positively denied the complainant's claim as to any usurious agreement or as to receiving any payments of $30 a month. The respondent testified in substance that the complainant allowed the interest on the first mortgage to fall considerably behind, that in fact only one payment of $18 to cover interest for six months had been made, and that, some time in 1931, he advanced to the complainant the further sum of $385, taking the latter's unsecured note therefor. The respondent testified that the complainant borrowed this last-named amount so that he could settle a matter in the federal court. Evidence was introduced on behalf of the respondent showing that in June 1931 the complainant made a payment of $350 in that court. The respondent's testimony revealed that from time to time he pressed the complainant for repayment of the moneys which had been advanced to him, and that the second mortgage was executed in January 1932, being in the nature of an accounting between the parties, and that at that time the respondent surrendered the above-mentioned note for $385. It appeared from evidence for the respondent that the sum of $450, which was the amount of the second note and mortgage, was made up of the loan of $385 to the complainant, interest in advance for six months at six per cent on $450, the face of such note and mortgage, and accrued and unpaid interest up to July 1932 at the same rate on the first mortgage of $600.

The testimony of the attorney who drew the mortgages and notes is, in substance, that when each mortgage was executed the parties came to his office together; that he received his instructions from the respondent in the presence of the complainant and immediately drew the instru-

ments, which were executed in each instance as soon as they had been prepared; and that, to the best of his recollection, no mention was ever made by the parties, in his presence, of any interest rate or interest payments other than those stated in the instruments themselves.

The contentions of the parties cannot be reconciled. The decision of the trial justice upon the clearly conflicting evidence presented herein depended to a considerable extent on the credibility of the witnesses, and the reasonableness and probability of their testimony, considering all the circumstances of the case. He had the opportunity of seeing and hearing the witnesses testify, an advantage which we do not have, and which is of great assistance in a case such as this. After a careful review of the evidence, the trial justice came to the conclusion that the complainant had failed to prove by a fair preponderance of the evidence his contention that the mortgages were invalid by reason of usury, and ordered the bill dismissed. From our examination of the record herein, we cannot say that the trial justice was clearly wrong in so holding, or that his decision failed to do justice between the parties. Therefore, in accordance with our well-established rule, we find that such decision is without error. *The Prudential Ins. Co.* v. *Tutalo*, 55 R. I. 160, and cases cited.

The complainant's appeal is denied and dismissed, the decree appealed from is affirmed, and the cause is remanded to the superior court for further proceedings.

*Arthur N. Votolato, Ralph Rotondo,* for complainant.
*William B. Sweeney, John J. Cosgrove,* for respondent.